Jed Margolin, *Pro Se*
1981 Empire Rd.
VC Highlands, NV 89521-7430
Telephone: 775-847-7845
Email: jm@jmargolin.com

☑ FILED          ☐ RECEIVED
☐ ENTERED        ☐ SERVED ON
                 COUNSEL/PARTIES OF RECORD

JUL 3 1 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

JED MARGOLIN,

    Plaintiff,

vs.

CHARLES F. BOLDEN, Administrator, National Aeronautics and Space Administration,

    Defendant.

Case No. 3:09-cv-00421

**COMPLAINT**

COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act, 5 U.S.C. § 552 (2007) ("FOIA"), for injunctive and other appropriate relief seeking the disclosure and release of agency records improperly withheld from plaintiff by defendant Charles F. Bolden, Administrator of the National Aeronautics and Space Administration.

Paid Amt $ 350.00  Date 7/31/09
Receipt # 21577  Initials [signature]

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(2)(A), 5 U.S.C. § 552(a)(2)(C), 5 U.S.C. § 552(a)(3)(A), 5 U.S.C. § 552(a)(3)(C), 5 U.S.C. § 552(a)(6)(A)(ii), and 5 U.S.C. § 552(a)(6)(F).

3. Venue is proper in this district pursuant to Section 552(a)(4)(B), as this is the district in which plaintiff resides.

## Parties

4. Plaintiff Jed Margolin ("Margolin") is an engineer and independent inventor who resides at 1981 Empire Rd., VC Highlands, Nevada.

5. Defendant Charles F. Bolden is the Administrator for the National Aeronautics and Space Administration ("NASA"), which is an independent administrative agency within the Executive Branch of the United States. NASA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

Statement of Facts - Background

6. Margolin is the named inventor on U.S. Patent 5,904,724 **Method and apparatus for remotely piloting an aircraft** issued May 18, 1999 (the '724 patent). The front page of the patent is in **Exhibit 1**, Appendix A12. The patent teaches the use of what is now called *synthetic vision* for controlling an unmanned aerial vehicle (UAV).

7. Margolin contacted NASA in May 2003 after he became aware that NASA had used synthetic vision in the X-38 project. Because the use of synthetic vision for controlling a UAV can be used to the detriment of this country by unfriendly entities he wanted a friendly conversation because he thought NASA should buy the patent in order to control the technology.

8. In June 2003 Margolin was turned over to Mr. Alan Kennedy in the Office of the General Counsel. This is what Margolin recorded in his Contact Log:

> *Summary: He basically said that what most independent inventors have is junk and that since I am an independent inventor what I have is probably junk. If NASA evaluates it as a license proffer it will give it a pro forma rejection and I will file a claim anyway, so the same people who rejected it as a proffer will reject it as a claim, but in the process will have had to do more work, so to save them some work they will ignore the proffer and handle it as a claim.*

9. As a result, Margolin filed a claim, completely answering all the questions on NASA's claim form. See **Exhibit 1**, Appendix A2. Then Mr. Kennedy informed him that

NASA would conduct an investigation (expected to last 3-6 months) and that the purpose of the investigation would be to find prior art to invalidate the patent.

10. After six months Margolin did not hear from NASA so he called Mr. Kennedy, who said:

    a. The investigation had not been done.

    b. NASA had a Research Exemption for using the patent. Margolin advised him this was not true. *See Madey v. Duke* 307 F.3d 1351 (Fed. Cir. 2002).

    c. "The X-38 never flew." Margolin informed him of the video on NASA's web site showing the X-38 flying.

    d. The Statute of Limitations gives NASA 6 years to respond to his claim.

    e. It would cost Margolin more to sue NASA in Federal Claims Court than he could hope to recover from NASA.

11. After that, Mr. Kennedy refused to talk to Margolin or respond to his letters. Then, various things came up and Margolin was unable to pursue his claim against NASA.

12. Subsequently, Margolin assigned the patent to Optima Technology Group, a Delaware Corporation. The claim against NASA went with the patent.

## Statement of Facts - Current Case

13. Although Margolin no longer owned the claim against NASA he still wanted to know the results of NASA's investigation so, on July 1, 2008 he filed a FOIA request. See **Exhibit 2**, Appendix A17. It was assigned FOIA HQ 08-270. For some reason it was turned over to Mr. Jan McNutt in the Office of the General Counsel. Mr. McNutt's response is **Exhibit 3**, Appendix A19. In his response Mr. McNutt admitted that no investigation had been done and asked Margolin to give NASA a 90-day extension to his FOIA request.

14. Margolin agreed to the extension. See **Exhibit 4**, Appendix A21. However, despite being told several times that the requested documents were being sent out, NASA did not send any documents to Margolin until May 18, 2009. It is likely that the reason NASA finally responded to Margolin's FOIA Request is the fax he sent to Acting Administrator Christopher Scolese where he asked Mr. Scolese to confirm that he had exhausted all the administrative remedies that NASA had to offer. See **Exhibit 5**, Appendix A23. Margolin had previously sent the letter to Mr. Scolese by Certified Mail, but USPS did not deliver it and still has no explanation how or where it was lost.

15. NASA's response to Margolin's FOIA Request is in **Exhibit 6**, Appendix A27. The documents themselves have been omitted from this Complaint due to their length. The NASA Response states:

> It has been determined that portions of the records found responsive to your request contain information which is exempt from disclosure under the deliberative process privilege of Exemption 5. This privilege covers advisory opinions, recommendations, and deliberations, which are part of the government decision-making process, 5. U.S.C. § 552(b)(5).

It should be noted that 5 U.S.C. § 552(b)(5) actually states, referring to Section (a) which requires agencies to make information available to the public:

> (b) This section does not apply to matters that are -
> .
> .
> .
> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

16. Although 5 U.S.C. § 552(a)(6)(F) requires agencies to give an estimate of the volume of the documents being withheld, NASA failed to do so.

17. One of the documents that NASA withheld from Margolin is a letter dated March 19, 2009 that was sent by Gary G. Borda ("Borda") NASA Agency Counsel for Intellectual Property to Optima Technology Group ("OTG"). See **Exhibit 7**, Appendix A30. This document was given to Margolin by OTG. In this letter Borda denies Claim I-

6

222 regarding NASA's infringement of U.S. Patent 5,904,724 ('724) in the X-38 project. Margolin's FOIA 08-270 request to NASA was to produce documents relating to Claim I-222 and NASA withheld <u>the</u> most material document so far. The Borda letter asserts:

> "... numerous pieces of evidence were uncovered which would constitute anticipatory prior knowledge and prior art that was never considered by the U.S. Patent and Trademark Office during the prosecution of the application which matured into Patent No. 5,904,724."

And states, "... NASA reserves the right to introduce such evidence of invalidity in an appropriate venue, should the same become necessary."

The exemption claimed by NASA in their FOIA Response was for:

> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

Optima Technology Group is not an agency under 5 U.S.C. § 552(f)(1). It is a private company. And circulating the Borda patent report solely within NASA or among other federal agencies is not an appropriate venue for NASA to use to have a patent declared invalid. The only appropriate venues for NASA to challenge the validity of a U.S. Patent are in the U.S. Court of Federal Claims and the U.S. Court of Appeals for the Federal Circuit. A Court will not accept NASA's word that a patent is invalid due to prior art. NASA would be required to produce the evidence. Thus the Borda patent report <u>would</u> be available by Law to a party other than an agency in litigation with the agency.

1   Therefore, the exemption NASA claims under 5 U.S.C.§552(b)(5) does not apply.

2   There is another reason NASA needs to produce the Borda patent report. Although Margolin no longer owns the '724 patent he is still the named inventor. By asserting it has evidence to invalidate the patent, and then withholding that evidence, NASA has defamed Margolin's reputation as an inventor. It smacks of 1950s McCarthyism (making damaging accusations without providing proper evidence).

18. Margolin filed a FOIA Appeal on June 10, 2009. The Margolin Appeal is **Exhibit 8**, Appendix A36. The Appendices in the appeal have been omitted due to their length. Margolin's FOIA Appeal was received at NASA Headquarters on June 12, 2009. See **Exhibit 9**, Appendix A57.

19. On Monday, July 21, 2009, Margolin called the NASA Office of the General Counsel to inform NASA that they had failed to respond by the 20 day statutory deadline required by 5 U.S.C. § 552(a)(6)(A)(ii), and to ask what NASA's intentions were. Margolin spoke to Mr. Randolph Harris who said he would look into the matter and call him back later that day. Mr. Harris did not call Margolin back that day, so the next day Margolin called Mr. Harris. Mr. Harris said that NASA would be sending Margolin a bunch of documents but he did not know what the documents were or when they would be sent. He guessed seven days. Margolin also asked whether NASA would waive legal

8

1  service and accept a Complaint by USPS Express Mail. Mr. Harris said, "No." Only
2  Certified mail. After Margolin told him about the problem when he had sent NASA the
3  letter of April 6, 2009 to Acting Administrator Scolese (USPS never delivered it) Mr.
4  Harris still said, "No." Margolin emailed Mr. Harris a letter asking him to confirm what
5  he had said in the telephone conversation. See **Exhibit 10**, Appendix A59.
6
7  20.   Margolin did not receive a reply from Mr. Harris. Instead he received an email
8  from Mr. Jan McNutt, who asked for a 20-day extension for NASA to respond to
9  Margolin's FOIA Appeal. See **Exhibit 11**, Appendix A61. Whereas Mr. Harris had
10 promised NASA would be sending more documents, Mr. McNutt did not. Since NASA
11 had been acting in bad faith toward Margolin for over six years and Mr. McNutt had
12 already taken improper advantage of the number of courtesies Margolin had extended to
13 him regarding Mr. McNutt's actions in the FOIA request, Margolin said, "No" to Mr.
14 McNutt's request for an extension. See **Exhibit 12**, Appendix A63. NASA had failed to
15 respond to his FOIA Appeal (or ask for an extension) within the 20 day statutory period
16 required by FOIA, and there was no reason to believe NASA had changed course and
17 was suddenly going to start acting in good faith.
18
19 21.   It is possible that Mr. Borda was being mendacious in his letter of March 19, 2009
20 when he said that NASA had prior art to invalidate the '724 patent. See **Exhibit 7**,

1  Appendix A30. Otherwise he would have produced the patent report, or at least listed the
2  evidence, to prove his point. It is possible that Mr. McNutt's request for an extension is to
3  give NASA time to look for some. Therefore, time is of the essence in compelling NASA
4  to respond now.

5

6  22.  Mr. Mike Abernathy of Rapid Imaging Software co-authored an article in
7  AUVSI's *Unmanned Systems Magazine* which presented a spurious history of synthetic
8  vision (**Synthetic Vision Technology for Unmanned Systems: Looking Back and**
9  **Looking Forward** by Jeff Fox, Michael Abernathy, Mark Draper and Gloria Calhoun).
10 See **Exhibit 13**, Appendix A66. Margolin responded with the article **Synthetic Vision –**
11 **The Real Story.** See **Exhibit 14**, Appendix A69. Although the editor of AUVSI
12 Magazine had promised Margolin the opportunity to respond in the magazine, he later
13 refused to even mention the controversy about the Abernathy article. See **Exhibit 15**,
14 Appendix A127. As result, Margolin posted his response on his personal web site at
15 www.jmargolin.com .
16      Mr. Abernathy's company provided the synthetic vision software for the X-38
17 project (**Exhibit 1**, Appendix A3) which is why NASA should disclose their contacts
18 with Mr. Abernathy and his company regarding the I-222 claim, the '724 patent, and
19 NASA's allegation that it has prior art to invalidate the '724 patent.
20

## Requested Relief

WHEREFORE, plaintiff respectfully requests that this Court:

A. Order defendant to disclose requested records in their entireties and provide copies to plaintiff, said records to include the patent report alleged to exist, but not provided, in the Borda letter, and contacts between NASA and Mike Abernathy (and/or Rapid Imaging Software and/or its employees and/or agents);

B. Issue an Order finding that defendant's actions were in bad faith, arbitrary, capricious, and contrary to law;

C. Provide for expeditious proceedings in this action;

D. Award plaintiff his costs incurred during the administrative proceedings and in this action; and

E. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/Jed Margolin/

Jed Margolin, plaintiff pro se
1981 Empire Rd.
VC Highlands, NV  89521-7430
775-847-7845
jm@jmargolin.com

Dated: July 31, 2009

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA


Jed Margolin,

Plaintiff


v.


Charles F. Bolden, Administrator,
National Aeronautics and Space Administration,

Defendant.


## Appendix


Jed Margolin
1981 Empire Rd.
VC Highlands, NV  89521-7430
Phone: 775-847-7845
Email: jm@jmargolin.com

Dated: July 31, 2009

## Appendix - Index

I.  Exhibit 1 - Margolin's claim against NASA for infringing on his patent in the X-38 project, filed June 17, 2003 ..................................................... A2

II.  Exhibit 2 - Margolin's Freedom of Information Act Request, asking for information relating to Margolin's claim, emailed June 28, 2008 ....................... A17

III.  Exhibit 3 - NASA's response, dated August 5, 2008, asking for a 90-day extension of time to respond to Margolin's FOIA Request ................................ A19

IV.  Exhibit 4 - Margolin's letter, dated August 8, 2008, giving NASA the 90-day extension it had requested ....................................................... A21

V.  Exhibit 5 - Margolin's fax to Acting Administrator Scolese, dated April 6, 2009, detailing the bad faith NASA had shown him, that NASA had still not responded to his FOIA request, and asking him to confirm he had exhausted all the administrative remedies NASA had to offer ............................................... A23

VI.  Exhibit 6 - NASA's email response, dated May 14, 2009, to Margolin's FOIA Request ......................................................................... A27

VII.  Exhibit 7 - Letter from NASA to Robert Adams of Optima Technology Group denying Optima's claim for patent infringement in the X-38 project ........... A30

VIII.  Exhibit 8 - Margolin's FOIA Appeal, sent June 10, 2009 ....................... A36

IX.  Exhibit 9 - USPS confirmation that Margolin's FOAI Appeal was delivered to NASA June 12, 2009 ............................................................. A57

X.  Exhibit 10 - Letter from Margolin to Randolph Harris (NASA), dated July 21, 2009 ........................................................................ A59

XI.  Exhibit 11 - Email from Jan McNutt (NASA) to Margolin, dated July 24, 2009 asking for a 20-day extension ............................................... A61

XII.  Exhibit 12 - Email from Margolin to Jan McNutt (NASA), dated July 24, 2009, The answer is "No." ..................................................... A63

XIII. Exhibit 13 - *Synthetic Vision Technology for Unmanned Systems: Looking Back and Looking Forward* by Jeff Fox, Michael Abernathy, Mark Draper and Gloria Calhoun, AUVSI's **Unmanned Systems**, December 2008, pages 27-28. ................................................... A66

XIV. Exhibit 14 - **Synthetic Vision Technology for Unmanned Aerial Systems: The Real Story** By Jed Margolin, January 7, 2009
www.jmargolin.com/svr/auvsi_response_index.htm ............................... A69

XV. Exhibit 15 - Email from Brett Davis, Editor of AUVSI Magazine to Margolin, dated January 30, 2009 ...................................................A127