UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JED MARGOLIN,

    Plaintiff,

v.

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION,

    Defendant.

3:09-CV-00421-LRH-VPC

ORDER

Before the court are five motions: Plaintiff's Motion for Summary Judgment (#32[1]), Defendant's Cross-Motion for Summary Judgment (#46), Defendant's Motion to Strike (#51), Plaintiff's Motion for Leave to File Declaration (#54), and Plaintiff's Motion to Strike (#55).

**I.  Facts and Procedural History**

This is an action under the Freedom of Information Act ("FOIA") to compel the National Aeronautics and Space Administration ("NASA") to disclose withheld or redacted agency records related to an administrative claim of patent infringement made by plaintiff Jed Margolin.

**A.  Margolin's Patent Infringement Claim, NASA Case No. I-222**

Margolin is an inventor and the original recipient of U.S. Patent Nos. 5,566,073 ('073) and 5,904,724 ('724). On June 7, 2003, Margolin submitted an administrative claim of patent infringement to NASA, designated as NASA Case No. I-222. Doc. #43, Exh. B; Graham Decl. ¶

---

[1]Refers to the court's docket entry number.

7.[2]  Margolin essentially claimed that NASA was infringing the two patents in connection with its X-38 project and possibly others that used technology termed "synthetic vision," related to the piloting of aircraft.  *See* Doc. #43, Exh. B.  Subsequently, Margolin withdrew his claim on the '073 patent and limited his claim to the '724 patent.  Doc. #19, App. 1 at A5.

Within NASA, Margolin's patent claim was assigned to the Commercial and Intellectual Property Law (CIPL) practice group in the Office of General Counsel for investigation.  Graham Decl. ¶ 7.  The NASA personnel supporting the investigation into Margolin's patent claim included multiple attorneys and engineers at several NASA locations.  *Id.* ¶¶ 11-15.  NASA personnel also communicated with and received documents from Rapid Imaging Software, Inc. ("RIS"), a NASA contractor which provided services in a technical area related to Margolin's patent claim and which separately received similar allegations of infringement regarding the same patents.  *Id.* ¶ 16.  Under RIS's contract, NASA was responsible for any infringing activities conducted by RIS in the performance of its contracts.  *Id.*

While the investigation was ongoing, on July 20, 2004, Margolin assigned all interest in the '724 patent to Optima Technology Group ("OTG").  *Id.* ¶ 7; Doc. #43, Exh. C at 1.  Four years later, on July 14, 2008, OTG notified NASA of the assignment and requested that NASA license the technology.  *See* Doc. 43, Exh. C at 1.  NASA apparently declined.

On March 19, 2009, NASA issued its final agency decision denying the patent infringement claim.  *Id.* at 1, 4.  NASA's decision was issued in a letter to OTG from Gary Borda, NASA Agency Counsel for Intellectual Property.  *Id.*  As OTG was the assignee of the Margolin patent, NASA treated OTG as standing in Margolin's shoes as the claimant.  *See id.* at 2.  NASA denied the infringement claim on the stated basis that NASA's implementations and configurations did not utilize technologies required by the '724 patent.  *Id.* at 3.  Additionally, Borda noted "[a]s an aside" that during NASA's investigation "numerous pieces of evidence were uncovered which would

---

[2]Declaration of Courtney B. Graham ("Graham Decl."), Doc. #42-1.

2

constitute anticipatory prior knowledge and prior art that was never considered by the U.S. Patent and Trademark Office." *Id.* at 4. Such evidence was not identified or discussed, however. Instead, Borda stated that in light of the finding of non-infringement, "NASA has chosen to refrain from a discussion that would demonstrate . . . invalidity of the subject patent. However, NASA reserves the right to introduce such evidence of invalidity in an appropriate venue, should the same become necessary." *Id.* Finally, the letter noted that "[t]his is a FINAL agency action" constituting "DENIAL" of the claim, and that OTG could appeal the agency decision by filing a claim for patent infringement under 28 U.S.C. § 1498(a) in the United States Court of Federal Claims. *Id.*

### B. Margolin's FOIA Request, No. 08-270

Despite assigning all interest in the '724 patent to OTG in 2004, Margolin still wanted to know the results of NASA's investigation. On June 28, 2008, Margolin sent NASA a FOIA request for "all documents related to the Administrative Claim of Jed Margolin for Infringement of U.S. Patent Nos. 5,566,073 and 5,904,724; NASA Case No. I-222." Doc. #43, Exh. A. The request was designated as FOIA No. 08-270. Graham Decl. ¶ 4.

On May 14, 2009, NASA issued its initial determination on Margolin's FOIA request. Doc. #43, Exh. D. The documents released in that initial response included 62 or 63 pages from the CIPL practice group file for Case No. I-222. Graham Decl. ¶ 20; Doc. #50, p. 62-63. An additional 227 pages were withheld as "exempt from disclosure under the deliberative process privilege of Exemption 5" of the FOIA. Doc. #43, Exh. D; Graham Decl. ¶ 20. This initial response was based solely on a search of the records of the CIPL practice group at NASA Headquarters and the CIPL case file for Case No. I-222; the request was not forwarded to NASA's field offices. Graham Decl. ¶¶ 6, 19. Furthermore, because the CIPL case file did not include the documents NASA had received from RIS, those documents were also not considered in NASA's initial review. *Id.* ¶ 19.

On June 10, 2009, Margolin filed an administrative appeal of the initial determination. Doc. #43, Exh. E. Margolin's appeal specifically mentioned NASA's failure to provide (1) an

3

estimate of the volume of the documents being withheld, as required by of 5 U.S.C. § 552(a)(6)(F); (2) the March 19, 2009 letter from Borda to OTG denying the administrative claim for patent infringement, which Margolin obtained from OTG and reproduced in his appeal while chastising NASA for not providing it; (3) a so-called "patent report" containing "the evidence" referred to in the Borda letter regarding the asserted invalidity of the '724 patent; and (4) "the records between NASA and Rapid Imaging Software (Mike Abernathy) which provided the synthetic vision system for the X-38 project which was referred to in the Borda letter." *Id.* at 1-3, 19-20.[3] Regarding the requested evidence, Margolin also requested "that NASA show how such materials and/or documents are directed to the '724 claims." *Id.* at 19. Not having heard from NASA, Margolin filed this FOIA lawsuit on July 31, 2009, appearing pro se. Doc. #1.

On August 5, 2009, NASA issued its final determination on Margolin's administrative appeal. Doc. #43, Exh. F. Regarding the four items identified above, NASA responded by (1) estimating the volume of documents withheld at approximately 100 pages; (2) noting that Margolin already had the March 19, 2009 Borda letter; (3) determining that the "[e]vidence (patent report)" referred to in the Borda letter, and NASA's opinion as to how such materials relate to the '724 claims, are protected by the attorney-client privilege and exempt from release under FOIA Exemption 5; and (4) determining that the requested records between NASA and RIS "exceed the scope of the original FOIA request." *Id.* at 2-3. Accordingly, NASA affirmed its initial determination as to the release of records. *Id.* at 3.

Prompted by Margolin's FOIA lawsuit, on August 12, 2009, NASA's Associate General Counsel for the CIPL practice group, Courtney Graham, issued a notice to preserve documents and a request for all records relating to Margolin's FOIA request and the administrative claim for patent infringement, Case No. I-222. Doc. #43, Exh. H; Graham Decl. ¶ 26-27. Whereas NASA's initial records search was limited to NASA Headquarters, Graham's request included NASA's field

---

[3] Page 3 is missing from Exhibit E but may be found at Doc. #19, App. 1 at A56.

4

offices. *See* Graham Decl. ¶¶ 6, 27. In response, Graham received over 5,600 pages of documents, many of which were duplicates. *Id.* ¶ 28. Graham reviewed the documents and determined that it would be appropriate for NASA to supplement the FOIA disclosures. *Id.* ¶ 29. Graham also initiated a review of the RIS documents that had not been included in the CIPL filed originally provided to the FOIA office, and a second review of the 227 pages withheld under Exemption 5 during the initial disclosures. *Id.* ¶¶ 30-31. Of those 227 pages, 205 would be released in whole or in part, and 22 would be withheld entirely under Exemptions 4 and 5. Index ##364-79[4]; Graham Decl. ¶ 31. Graham also reviewed the documents that were released in the initial disclosures, found that none had been redacted, and directed that exempt information be redacted from future disclosures. Graham Supp. Decl. ¶ 11.[5]

On November 5, 2009, NASA issued a supplemental response to Margolin's FOIA request. Doc. #45, Exh. K. The supplemental response included approximately 4,000 pages; however, some documents were redacted and others withheld entirely under FOIA Exemptions 3, 4, 5 and 6. *Id.* at 1; Graham Decl. ¶ 40. Redacted documents were marked with the asserted FOIA exemption. Graham Decl. ¶ 32. Redacted information included (1) personal information, such as telephone numbers, street addresses, personal e-mail addresses, and bank account information, withheld under Exemption 6; (2) segregable portions of communications among NASA attorneys and between NASA attorneys and technical personnel regarding the review of the administrative claim for patent infringement prior to NASA's issuance of its final agency decision, withheld under Exemption 5; and (3) OTG's offers of settlement, with specific information regarding license fees and other financial details relating to the relevant patents, withheld under Exemption 4. *Id.* ¶¶ 33-34.

As for the documents withheld in their entirety, NASA withheld under Exemption 3 two

---

[4]Margolin FOIA Withheld Index ("Index"), Doc. #44, Exh. I.

[5]Supplemental Declaration of Courtney B. Graham ("Graham Supp. Decl."), attached to Doc. #52.

5

copies of a contract proposal from RIS.  Graham Decl. ¶ 35; Index ##220, 381.  Under Exemption 4, NASA withheld offers of settlement or compromise from OTG, *see* Graham Decl. ¶ 37; Index ##7-12, 14, 16, 21, 32-33, 78-79, 81, 83, 104-06, 198-200, 202-03, 378; and documents received from RIS containing communications between RIS and its attorneys regarding NASA's review of the administrative claim for patent infringement, Case No. I-222, *see* Graham Decl. ¶¶ 38-39; Index ##18, 34-36, 38, 116, 133-36, 221-47, 356, 380, 382-96; *see also* Doc. #45, Exh. J.  Under Exemption 5, NASA withheld e-mails among NASA attorneys and technical personnel discussing Case No. I-222; documents prepared by or at the direction of NASA attorneys in the investigation of Case No. I-222; and claim charts created to assist NASA attorneys in evaluating Case No. I-222.  Graham Decl. ¶¶ 36.  Under Exemption 6, no documents were withheld in their entirety; only redactions were made.  *See* Graham Decl. ¶ 33; Index (including no (b)(6) listings).

**C.  This Lawsuit**

As noted above, Margolin initiated this lawsuit on July 31, 2009, appearing pro se.  The currently-operative "Second Amended Complaint" (#19), filed on January 11, 2010, alleges a single cause of action against NASA[6] for violation of the duty of disclosure under FOIA, 5 U.S.C. § 552(a).  Doc. #19, p. 96.  Margolin alleges that NASA failed to disclose all documents related to his administrative claim for patent infringement, NASA Case No. I-222.  *Id.*

On June 9, 2010, Margolin filed a motion for summary judgment (#32).  On September 7, 2010, NASA filed a joint opposition and cross-motion for summary judgment (##42, 46).  On October 4, 2010, Margolin filed a reply in support of his motion (#49) and an opposition to NASA's cross-motion (#50).  On November 1, 2010, NASA filed a reply in support of its cross-motion (#52).

Also on November 1, 2010, NASA filed a motion to strike (#51) the exhibits attached to Margolin's reply and response (##49-50) due to the lack of a supporting declaration and for other

---

[6]NASA Administrator Charles F. Bolden was dismissed as a defendant on March 11, 2010.  Doc. #27.  NASA is the sole remaining defendant.

6

reasons. On November 8, 2010, Margolin filed a joint opposition and motion for leave to file the missing declaration (#54). NASA then filed a joint reply and opposition (##57-58).

Also on November 8, 2010, Margolin filed his own motion to strike (#55) directed at NASA's reply in support of its cross-motion for summary judgment (#52). NASA then filed an opposition (#59) and errata (#60), and Margolin filed a reply (#61).

## II.  Procedural Motions

Good cause appearing, Margolin's motion for leave to file a declaration in support of his exhibits (#54) will be granted, and NASA's motion to strike (#51) will be denied. As for NASA's assertion that allowing Margolin to file a tardy declaration would be prejudicial, *see* Doc. #57, p. 57, that assertion is substantially undercut by NASA's more persuasive argument that many of the factual assertions supported by Margolin's exhibits are immaterial to the court's resolution of the parties' cross-motions for summary judgment. *See* Doc. #52, p. 3 n.1.

Margolin's motion to strike (#55) will also be denied. NASA's reference to itself as the "Government" in the title of its reply brief (#52), though imprecise, is neither misleading nor prejudicial. Additionally, the court will not strike the factual and legal assertions of a party simply because they are incorrect or even morally objectionable in the eyes of his opponent.

## III.  Cross-Motions for Summary Judgment

### A.  Summary Judgment Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

1 The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the plaintiff. *See id.* at 252.

### B. Legal Standards under FOIA

FOIA creates a judicially enforceable public right of access to government documents. *See* 5 U.S.C. § 552(a)(4)(B); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). "[D]isclosure, not secrecy, is the dominant objective of the Act. *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976). "At the same time, FOIA contemplates that some information may legitimately be kept from the public." *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). The statute contains nine exemptions, pursuant to which agency records may be redacted or withheld in their entirety. *See* 5 U.S.C. § 552(b)(1)-(9); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173-74 (1991). The exemptions "must be narrowly construed," *Rose*, 425 U.S. at 361, but must also be

8

given "meaningful reach and application," *John Doe*, 493 U.S. at 152. Given "the strong presumption in favor of disclosure," *Ray*, 502 U.S. at 174, where agency records are withheld or redacted under the statutory exemptions, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The court reviews the agency action "de novo." *Id.*

FOIA cases are typically resolved on summary judgment as "the facts are rarely in dispute." *Minier v. CIA*, 88 F.3d 798, 800 (9th Cir. 1996). "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought," "so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim." *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079, 1082 (9th Cir. 2004). "Ordinarily, the government must submit detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption"—otherwise known as a *Vaughn* index. *Id.* at 1082 (citing *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973)). "If the agency supplies a reasonably detailed affidavit describing the document and facts sufficient to establish an exemption, then the district court need look no further in determining whether an exemption applies." *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979). The court has discretion to conduct an *in camera* inspection of the documents withheld. 5 U.S.C. § 552(a)(4)(B). "*In camera* inspection of documents is disfavored, however, where the government sustains its burden of proof by way of its testimony or affidavits." *Lion Raisins*, 354 F.3d at 1082.

NASA has withheld and redacted documents citing FOIA Exemptions 3, 4, 5 and 6. The court will address each in turn.

**C. Exemption 3**

Exemption 3 incorporates into FOIA other statutory non-disclosure provisions by permitting an agency to withhold information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The statute in question must satisfy two requirements: (A) it must prohibit

9

public non-disclosure "in such a manner as to leave no discretion on the issue," or "establish[] particular criteria for withholding or refer[] to types of matters to be withheld"; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, it must specifically cite § 552(b)(3). *Id.*

Citing Exemption 3, NASA has withheld two copies of a contract proposal made by RIS, a NASA contractor, under the NASA Small Business Innovation Research program. *See* Graham Decl. ¶¶ 16, 35; Index ##220, 381. NASA argues the RIS proposal is prohibited from disclosure under two nearly identical statutes that expressly prohibit disclosure under FOIA of a "competitive proposal" submitted by an agency contractor, unless the proposal "is set forth or incorporated by reference in a contract entered into between the agency and the contractor." 41 U.S.C. § 253b(m); 10 U.S.C. § 2305(g); *see also* 10 U.S.C. § 2303(a)(6) (listing NASA as an agency covered by § 2305(g)). NASA submits that the statutory prohibition applies because, based on its review of the RIS contract documents, the RIS proposal was not incorporated by reference into the resulting contract. Graham Decl. ¶ 35. In response, Margolin argues only that NASA has failed to produce the RIS contract to prove that the proposal was not incorporated by reference, and he requests the court to conduct an *in camera* review. Doc. #50, pp. 13-14.

Here, the sworn declaration of NASA attorney Courtney Graham and NASA's Index of withheld documents set forth in sufficient detail the factual and legal basis for withholding the RIS proposals under Exemption 3. *See* Graham Decl. ¶¶ 16, 35; Index ##220, 381; *Lion Raisins*, 354 F.3d at 1082. "No further disclosure would have enabled [plaintiff] to argue for their release." *Weiner v. FBI*, 943 F.2d 972, 983 (9th Cir. 1991). Margolin's mere refusal to believe Graham's sworn representations is insufficient to warrant *in camera* review. *See Lion Raisins*, 354 F.3d at 1079. Based on the uncontroverted evidence, the RIS proposals plainly satisfy the terms of 41 U.S.C. § 253b(m), 10 U.S.C. § 2305(g), and FOIA Exemption 3. Summary judgment is therefore appropriate as to the RIS proposals, Index ##220, 381.

### D. Exemption 4

Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The exemption thus covers (1) commercial or financial information, (2) obtained from a person, (3) that is privileged or confidential. *GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994).

Citing Exemption 4, NASA has (1) withheld offers of settlement or compromise from OTG, *see* Graham Decl. ¶ 37; Index ##7-12, 14, 16, 21, 32-33, 78-79, 81, 83, 104-06, 198-200, 202-03, 378; (2) redacted information from released documents pertaining to OTG's offers, including specific information regarding license fees and other financial details relating to the patents asserted in the administrative claim for patent infringement, *see* Graham Decl. ¶ 34; and (3) withheld documents received from RIS containing communications between RIS and its attorneys regarding NASA's review of the patent infringement claim, *see id.* ¶¶ 38-39; Index ##18, 34-36, 38, 116, 133-36, 221-47, 356, 380, 382-96; *see also* Doc. #45, Exh. J.

The OTG offers of settlement or compromise, license fees and other financial details of the OTG offers, and the RIS communications regarding the patent infringement claim, plainly qualify as "commercial or financial information" within the meaning of § 552(b)(4). *See Miller, Anderson, Nash, Yerke & Wiener v. U.S. Dep't of Energy*, 499 F.Supp. 767, 770 (D. Or. 1980). Such information was also obtained from a "person" for FOIA purposes. *See* 5 U.S.C. § 551(2) (defining "person" as including individuals and corporations). Margolin does not assert the contrary. *See* Doc. #50, pp. 17-18.

The court also finds that the information is "confidential" because disclosure would likely "impair the government's ability to obtain necessary information in the future." *GC Micro*, 33 F.3d at 1112-13 (citing *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). "[T]he test for confidentiality is an objective one." *Nat'l Parks*, 498 F.2d at 766. As NASA submits, disclosure of the types of information at issue would likely dissuade companies from turning over such information in the future for fear that NASA would again release the

information to the public. Graham Decl. ¶ 40; Doc. #42, p. 13.

This is especially true in the case of RIS's attorney-client communications related to Margolin's claim of patent infringement, which implicated the technical work RIS was performing for NASA under its agency contract. *See* Graham Decl. ¶¶ 16-17. NASA argues that in addition to being confidential, such materials are also protected by the attorney-client, attorney work product, and common interest privileges. *See* Doc. #42, pp. 13-14. But even if Margolin were correct that RIS's materials ceased to be privileged upon disclosure to NASA, the information is still exempt from disclosure. Information may be either "privileged *or* confidential" to qualify under Exemption 4. 5 U.S.C. § 552(b)(4) (emphasis added). And if the common interest privilege were inapplicable, the RIS materials would qualify as confidential *a fortiori*, as the potential waiver of the attorney-client privilege and the public disclosure of attorney work product would certainly dissuade an agency contractor from providing its attorney work product to NASA in the future. *See Miller, Anderson*, 499 F. Supp. at 771-72.

Furthermore, contrary to Margolin's argument, NASA's inadvertent disclosure of or failure to redact bank account numbers and other information related to the OTG offers of settlement or compromise in its initial FOIA response do not preclude NASA from withholding the same or similar information under Exemption 4 in its supplemental response. *See* Doc. #49, pp. 17-18; Graham Decl. ¶¶ 11-12 (attesting that such initial disclosures were inadvertent). A contrary holding would only increase the reticence to provide commercial and financial information to NASA, thereby further impairing the agency's ability to obtain such information in the future.

For the foregoing reasons, summary judgment is appropriate as to the OTG and RIS materials withheld and redacted under Exemption 4.

### E. Exemption 5

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 thus exempts from disclosure "documents which a private party could

not discover in litigation with the agency." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The second condition incorporates civil discovery privileges, including the attorney-client, attorney work-product, and deliberative process privileges. *Id.*; *Sears, Roebuck & Co.*, 421 U.S. at 149, 154. "The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 148-49). Accordingly, the Supreme Court has adopted a "categorical rule" that attorney work-product is exempt from mandatory disclosure under Exemption 5 "without regard to the status of the litigation for which it was prepared." *Id.* at 28.

Citing Exemption 5, NASA has withheld e-mails among NASA attorneys and technical personnel discussing the administrative claim for patent infringement; documents prepared by or at the direction of NASA attorneys in the investigation of the claim; and claim charts created to assist NASA attorneys in evaluating the claim. *See* Graham Decl. ¶¶ 36; Index ##2-6, 13, 15, 17, 19-20, 22-31, 37, 39-77, 80, 82, 84-103, 107-15, 117-32, 137-97, 201, 204-19, 248-51, 253-355, 357-77, 379.[7] NASA also redacted information from communications among NASA attorneys and between NASA attorneys and technical personnel regarding NASA's review of the patent infringement claim. *See* Graham Decl. ¶ 33. The court's review of the Index of withheld documents further reveals that some of the documents withheld under Exemption 5 included correspondence among and with NASA attorneys pertaining to Margolin's FOIA request and

---

[7]The Index of withheld documents cites no exemption for Index #109 and #255. Nonetheless, the court finds it appropriate to treat such documents as withheld under Exemption 5. This determination is based on the identifying and descriptive information Index ##109 and 255, the Graham declaration's descriptions of Exemption 5 materials and identification of NASA personnel, and a comparison with other documents in the Index for which a "(b)(5)" exemption is claimed.

13

1  appeal, which ultimately culminated in this litigation.  *E.g.*, Index ##188-90.

2        Based on the court's review of the descriptions in the Graham declaration and the
3  individualized descriptions in the Index of withheld documents, the court finds that the above
4  materials were circulated among NASA personnel and therefore qualify as "intra-agency"
5  materials.  The court further finds that these materials were circulated among NASA attorneys and
6  between NASA attorneys and NASA's technical experts in the course of the investigation and
7  analysis of Margolin's administrative claim for patent infringement and NASA's response to
8  Margolin's FOIA request.  Such attorney-client communications and attorney work product in the
9  course of an agency's response to administrative claims against the agency and in contemplation of
10 potential litigation against the agency are not "normally" or "routinely" subject to disclosure in
11 civil litigation and are therefore exempt from mandatory disclosure under Exemption 5, without
12 regard to the status of any litigation.  *See  Grolier*, 462 U.S. at 28; *see also Klamath*, 532 U.S. at 8;
13 *Sears, Roebuck & Co.*, 421 U.S. at 154.

14       Additionally, the same documents are also protected under the deliberative process
15 privilege, at least insofar as they predate NASA's final agency decision on the patent infringement
16 claim and NASA's final decision on Margolin's FOIA request.  *See Lahr*, 569 F.3d at 981 ("The
17 documents must be prepared to assist an agency decision-maker in arriving at a future particular
18 decision . . . .").  The deliberative process privilege protects the decision-making processes of
19 government agencies and covers "documents reflecting advisory opinions, recommendations and
20 deliberations comprising part of a process by which governmental decisions and policies are
21 formulated."  *Sears, Roebuck & Co.*, 421 U.S. at 150 (internal quotation marks and citations
22 omitted).  "The deliberative process privilege rests on the obvious realization that officials will not
23 communicate candidly among themselves if each remark is a potential item of discovery and front
24 page news, and its object is to enhance 'the quality of agency decisions.'"  *Klamath*, 532 U.S. at 8-
25 9 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151).

26       Margolin does not argue that the attorney-client and attorney work-product privileges are

inapplicable to communications between NASA personnel, or that the deliberative process privilege is inapplicable to such documents that predate to NASA's decision to deny the administrative claim for patent infringement and NASA's decisions on Margolin's FOIA request. Instead, with respect to documents pertaining to the patent infringement claim, Margolin argues that the date according to which the documents may be deemed "post-decisional" for purposes of the deliberative process privilege is July 12, 2004, rather than March 19, 2009, the date of NASA's final agency decision (the so-called "Borda letter"). Margolin chooses July 12, 2004, because on that date Edward Fein, a NASA attorney at the Johnson Space Center ("JSC"), sent an email to Frank Delgado, a NASA engineer at JSC, thanking him for his "detailed analysis and research" on the patent infringement claim and stating that his effort "will be the basis for NASA's denying the administrative claim." *See* Doc. #32, p. 9.

The court disagrees. The so-called "Fein email" does not represent NASA's decision to deny the administrative claim for patent infringement. Rather, it reflects one NASA attorney's intent to do so in the future. Rather than representing the culmination of NASA's research, investigation, and deliberations regarding its decision on the patent infringement claim, the Fein email represents simply one step in that deliberative process. As even Margolin recognizes, following the Fein email, NASA continued to deliberate as to the appropriate response to the patent infringement claim, including considering whether to file a request for reexamination of the Margolin patent. In Margolin's words, after the Fein email, NASA "got ready for litigation." Doc. #49, p. 7. Additionally, NASA's final agency decision was not released until years later, following further communications among NASA attorneys and technical experts analyzing the patent claims and the circulation of multiple drafts of the agency's decision. As a small sampling, *see, e.g.*, Index ##178-87. To hold that an agency's deliberative communications following such an expressed intention regarding an agency's future decision are not protected from disclosure under the deliberative process privilege would undermine the very purpose of the privilege. "[D]isclosure of [such] materials would expose [the] agency's decision-making process in such a

way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Lahr*, 569 F.3d at 982 (internal quotation marks and citation omitted).

The court therefore concludes that intra-agency materials identified above were properly withheld under Exemption 5 as intra-agency materials protected from disclosure under the attorney-client, attorney work-product and deliberative process privileges. The court need not reach the parties' disagreement as to whether Exemption 5 and the common-interest privilege apply to the RIS attorney-client communications that were disclosed to NASA, as the court has already concluded that such materials are exempt from disclosure under Exemption 4. *See* Part D *supra*.

The court also finds, however, that NASA has failed to sustain its burden to justify its withholding under Exemption 5 as to one document: Index #252, Bates ##03710-11, identified as a two-page letter from John Mannix to W. Calvert responding to a patent infringement claim filed by W. Calvert regarding Patent No. 6,107,962, NASA Case No. I-217. NASA's submissions fail to identify Mannix and Calvert, describe the subject matter of the patent claim, or establish how this document constitutes privileged intra- or inter-agency material. Indeed, other than being identified by NASA as a document withheld in response to Margolin's FOIA request, the court is unable to determine exactly how the document pertains to the subject matter of Margolin's request. Based on the description provided, the document appears to be NASA's decision on a patent claim filed by a different person as to a different patent. In any event, because NASA has identified the document as responsive but has failed to sustain its burden to establish the application of a statutory exemption from disclosure, Margolin is entitled to summary judgment as to the document identified at Index #252.

### F. Exemption 6

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

16

The term "similar files" has "a broad, rather than a narrow, meaning" and encompasses "information which applies to a particular individual" that is found in "records other than 'personnel' or 'medical' files." *U.S. Dep't of State v. Washington Post. Co.*, 456 U.S. 595, 600-02 (1982). The term "unwarranted" requires the court to "balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." *Lahr*, 569 F.3d at 973 (citing *Favish v. Nat'l Archives & Records Admin.*, 541 U.S. 157, 171 (2004)). The term "clearly" refers to "the magnitude of the public interest that is required to override the respective privacy interests protected by the exemption[]." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994). The personal privacy interests at issue "encompass a broad range of concerns relating to an 'individual's control of information concerning his or her person,' and an 'interest in keeping personal facts away from the public eye." *Lahr*, 569 F.3d at 974 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 769 (1989)). "Once the government has identified a cognizable privacy interest, 'the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" *Id.* (quoting *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355-56 (1997) (per curiam)).

Citing Exemption 6, NASA withheld no documents in their entirety and made only redactions to documents that were released. *See* Graham Decl. ¶ 33; *see also* Index (including no (b)(6) listings). Information redacted under Exemption 6 was personal information, including telephone numbers, street addresses, e-mail addresses, bank account information, and social security numbers. *See* Graham Decl. ¶¶ 32-33. Such information is properly considered private information within the purview of Exemption 6. *See Washington Post*, 456 U.S. at 600-01.

For his part, Margolin waives any interest in bank account information and social security numbers. Doc. #49, pp. 16, 18. Instead, he argues that NASA's redactions of names and addresses is "disingenuous" because "NASA openly posts the names and addresses of many NASA

employees on their Web sites." *Id.* at 17.  Margolin's argument misses the mark, however, as NASA has not claimed an exemption for agency information—only *personal* information.  Furthermore, Margolin has entirely failed to carry his burden of showing how the disclosure of such information would shed light on NASA's performance or otherwise let citizens know what their government is up to.  *Bibles*, 519 U.S. at 355-56.

Because Margolin has failed to identify any public interest, the court finds that the redactions of personal information are appropriate under Exemption 6.

**IV.   Conclusion**

For the foregoing reasons, the court concludes that NASA is entitled to judgment as a matter of law as to the withholding and redaction of information under Section 552(b) of the Freedom of Information Act, with the exception of the document identified at line #252 of the Index of withheld documents.  As to that document, NASA has failed to carry its burden of establishing the applicability of a statutory exemption from disclosure, and Margolin is therefore entitled to its release.

IT IS THEREFORE ORDERED that Defendant's Motion to Strike (#51) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Declaration (#54) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (#55) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#32) is GRANTED in part and DENIED in part as specified in this order.

///
///
///
///
///

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment (#46) is GRANTED in part and DENIED in part as specified in this order.

The clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 31st day of March, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE